

# 37:24 COMPLAINT

## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

AARON MORRIS
Plaintiff,

DEC 20 2024 PM 12:37
FILED - USDC - FLMD - TPA

8:24cv 2944 MSS-tGW

VS

HILLSBOUROUGH COUNTY SHERIFF's OFFICE, Tampa, Fl.
HILLSBOUROUGH COUNTY SHERIFF CHAD CHRONISTER,
H.C.S.O. STREET CRIMES UNIT, Corp. JOHN N. PETERSON
Bg.# 246939, JOSEPH C. GONZALEZ Bg.# 259140,
CHRISTOPHER J GRAHAM Bg.# 258662, Defendants (1-6)

Page 1

# TABLE OF CONTENTS

Page

1 PLAINTIFF                              1-2

2 DEFENDANTS                             1-2

3 CAUSE/CLAIMS                           3-4

4 CLAIMS PER DEFENDANT                   5-11

5 FACTS                                  12-15

6 RELATED INFORMATION                    16-(A)

7 PLAINTIFF's DEFENCE (A)-(18)
   In RELATED CASES
   (added to help support claims due to
   lack of paper).

# CIVIL ACTION
## (TORT)

AARON MORRIS, PLAINTIFF
(address: 14411 Balm Boyette
Rd Riverview Fl 33579)

VS

HILLSBOUROUGH COUNTY, FLORIDA
SHERIFF's OFFICE, HILLSBOUROUGH
COUNTY SHERIFF, CHAD
CHRONISTER, H.C.S.O. STREET
CRIMES UNIT, Corp. JOHN N.
PETERSON Bg.# 246939, Dep.
JOSEPH C. GONZALEZ Bg.# 259140,
Dep. CHRISTOPHER J. GRAHAM
Bg.# 258662, (Defendants 1-6)

Page 2

PlainTiff AARON MORRIS, Sues Defendents and alleges: (See Statement)

This is an action for Contribution pursuant to § 768.31, Fla. Stat. that Plaintiff is seeking 200,000.00 per Claim per Defendant with the exeptions of Claims 12, 15, 16, of page 2 Claims. Claim 12 would be four times each Defendant, representing each of the four unreasonable/unwarranted arrests made by Defendants. Claims 15 and 16 amounts are as listed on page 2 Claims.

Page 3

# Claims (for Misconduct)

1. Negligent Hiring
2. Negligent Training
3. Negligent Supervision
4. Falsifying reports
5. False imprisonment/detention
6. Harassment
7. Stalking
8. Oppression
9. Operating under color of Law (state)
10. Mental Distress
11. Intentional infliction of emotional distress
12. Unlawful, Unwarranted Arrests (x 4).
13. Loss of income
14. Loss of real property
15. Loss of personal property (Est @ $18,000.00)
16. Loss of vehicles (Est. @ $7,800.00)

Plaintiff is seeking $200,000.00 per Claim per Defendant with the exeption of Claims 15 and 16.

Page @ 4

# HILLSBOUROUGH COUNTY SHERIFF's OFFICE (defendant #1)

1. Negligent Hiring
2. Negligent Training
3. False imprisonment/detention
4. Falsifying reports
5. Oppression
6. Harassment
7. Stalking
8. Unlawful, Unwarranted Arrests x4
9. Mental Distress
10. Operating under color of law (State)
11. Negligent Supervision
12. Loss of income
13. Intentional infliction of emotional distress (IIED).
14. Loss of real property
15. Loss of personal property
16. Loss of vehicles

Page 5

HILLSBOUROUGH County
SHERIFF, CHAD CHRONISTER
(defendant #2)

1. Negligent Hiring
2. Negligent Training
3. Negligent Supervision
4. False imprisonment
5. Falsifying reports
6. Oppression
7. Harassment
8. Stalking
9. Unlawful, Unwarrented Arrests x 4
10. Operating under color of Law (state)
11. Loss of income
12. Loss of real property
13. Intentional Infliction of emotional Distress (IIED)
14. Mental Distress
15. Loss o personal property
16. Loss of vehicles

"Page 6"

# HILLSBOUROUGH COUNTY SHERIFF's OFFICE STREET CRIMES UNIT (defendant #3)

1. Negligent Training
2. Negligent Supervision
3. False imprisonment
4. Falsifying reports
5. Oppression
6. Harassment
7. Stalking
8. Unlawful, Unwarranted Arrests x 4
9. Operating under color of law (State)
10. Mental Distress
11. Intentional Infliction of Emotional Distress

"Page 8"

Corp. JOHN N. PETERSON
Bg# 246939 (Defendant #4)

1 Negligent Training
2 Negligent Supervision
3 False Imprisonment
4 Falsifying reports
5 Oppression
6 Stalking
7 Harassment
8 Unlawful, Unwarranted Arrests x 4
9 Operating under color of law (state)
10 Mental Distress
11 Intentional Infliction of Emotional Distress (IIED)
12 Loss of income
13 Loss of real property
14 Loss of personal property
15 Loss of vehicles

Page 9

Dep. JOSEPH C. GONZALEZ
Bg# 259140 (Defendant #5)

1 False imprisonment
2 Falsifying reports
3 Oppression
4 Harassment
5 Stalking
6 Unlawful, Unwarranted Arrests x 4
7 Operating under color of law (State)
8 Loss of income
9 Loss of real property
10 Loss of personal property
11 Loss of vehicles
12 Mental Distress
13 Intentional Infliction of Emotional Distress (IIED)

"Page10" Page 10

Dep. CHRISTOPHER J. GRAHAM
Bg.# 258662 (Defendant #6)

1. False imprisonment
2. Falsifying reports
3. Oppression
4. Harassment
5. Stalking
6. Unlawful, Unwarranted Arrests x 4
7. Operating under color of law (State)
8. Loss of income
9. Loss of real property
10. Loss of personal property
11. Loss of vehicles
12. Mental Distress
13. Intentional Infliction of Emotional Distress (IIED)

Page 11

# FACTs

Sheriff may appoint deputies to act under him/her who shall have the same power as the Sheriff appointing them and for the neglect and default of whom in the execution of their office the Sheriff shall be responsible.

Because H.C.S.O. Street Crimes Unit acted by vertue of their (office) position and within the course and scope of Their employment, the defendant Sheriff is vicariously liable for H.C.SO's Street Crimes Unit's tortious conduct.

Deputies misconduct is responsible for violating PlainTiff; fourth, fourteenth Amendments along with unrecoverable damages/injury(s)

Plaintiff last four arrests were by same three Officers using false information and, or misinformation to justify their misconduct.(to cover up their inability to perform their duties lawfully). "Page 12"

# FACTs

An investigation will expose enough misconduct in Plaintiff's past arrests to warrant being addressed. Defendants own files/records will be enough evidence to prove misconduct on a consistent Level, along with oppression, falsifying reports, Harassment, Stalking, and violating Plaintiffs civil rights. Defendants actions have lead (caused) a total loss in Plaintiff's way of life! Plaintiff will not be able to recover without some assistance. As a direct and proximate result of the unlawful restraint of his liberty, the Plaintiff suffered the alleged damages.

H.C.S.O. Street Crimes Unit knew well before they attempted to perform a pretext stop that Plaintiff was in vehicle in question. Deputies were parked at a church across the street from Plaintiffs Location (Private property) stalking Plaintiff. Deputies even stated that it was a random Traffic stop. If what they said (stated on record) was remotely true,

Page 13

# FACTs

when deputies engauged in said Traffic stop (Plaintiff's last arrest), when, if deputies would have turned on emergency lights (red and blues) the vehicle's dash camera is automaticly engauged untill emergency lights are disengauged. Any dash camera footage they have would only support Plaintiff claim of misconduct. Because this deputies did not put any dash camera footage in their reports. The body worn camera belonging to Dep Gonzalez will show him walking on private property, there was no lawful reason for deputies to enter third party's residence, they were not in Hot pursuat no warrant and they were not conducting business there making it a illegal arrest. Plaintiff, given the chance will prove substantial misconduct at trial, using their own statements and reports. Plaintiff will be able to show more misconduct before trial (upon bing released from Jail) "Page 14"

# FACTs

Statements made herein are a portion of Defendants misconduct, Plaintiff, backed by substantial evidence will be able to prove without a doubt everything stated herein.

I added a potion of Plaintiffs defence of two cases related to this cause (Action)

I the ~~D~~ Plaintiff swear under penalty of purjury everything stated in this cause (action) is true!

AARON L. MORRIS
(Plaintiff)

*Aaron Morris*

Page 15

56 S.C.L. Rev. 481

Corrective justice is immanent in the most fundamental concepts of negligence law. By tracing different aspects of the progression from the doing to the suffering of harm, these concepts coalesce into a single normative sequence and thus instantiate corrective justice. Throughout, negligence law treats the plaintiff and the defendant as correlative to each other: the significance of doing lies in the possibility of causing someone to suffer, and the significance of suffering lies in its being the consequence of someone else's doing. Central to the linkage of plaintiff and defendant is the idea of risk, for risk imports relation. The sequence starts with the potential for harm inherent in the defendant's wrongful act (hence the standard of reasonable care) and concludes with the realization of that potential in the plaintiff's injury (hence the role of misfeasance and factual causation). The

Concepts of duty of care and proximate cause link the defendant's actions to the plaintiff's suffering through judgements about the generality of the description of the actions' potential consequences. Each of the negligence concepts traces an actual or potential connection, between doing and suffering, and together they translate into juridical terms the movement of effects from the doer to the sufferer. In this way the negligence concepts form an ensemble that brackets and articulates a single normative sequence.

Case No. 2023-CF-01118
2024-CF-009109

Motion (A)

# Motion to Dismiss

The Defendant Aaron Morris (Pro se) pursuant to Fla. R. Crim. P. 3.190(c) moves to dismiss the above styled cause. As grounds therefor and in support of his motion would state the following. (Please see pages 1-18).

I, the Defendant in this case swear under penalty of purjury that I have read this motion and that the statements made in it are true.

Respectfully Submitted

Aaron Morris

Aaron Morris

motion (B)

Motion For Continuance
Case # 23-CF-011118   Set For Nov. 5

The Defendant Aaron Morris (Prose)
pursuant to Fla. R. Crim. P. 3.190(F)
moves this Honorable Court to grant
a continuance for Defendants V.O.P.
Hearing (case # 23-CF-011118). Grounds
for continuance: Would like the
opertunity to show violation was not
just. Officers misconduct lead to
an unlawful arrest which caused a
violation of Defendants probation.
continued harassment by same
officers for years.
The Trial of case 24-CF-009109 will
prove officers misconduct, was the
only reason a violation took place.

I the Defendant swear under the
penalty of purgury the statement
herein is true
                Respectfully

                Aaron Morris

# Official Statement

Comes now Aaron Morris (defendant) to mak a sworn statement. Evidence and eyewhitness account will show H.C.S.O. Street Crimes unit performing an illegal arrest. Deputy J. Gonzalez stated in his C.R.A. that he conducted a rutine (random) Traffic Stop. If what he stated was true when Deputy Gonzalez turned on the emergency (red and blue) lights, the dash camera is automaticity engauged (Ref. to P.4). I ask where is the dash camera footage backing said deputy's statement? There is none, because there never was anything lawful about Deputy Gonzalez and his units actions. Their own evidence (or lack there of) will show their misconduct (straight lying). (Ref. to P.7)

Now for the truth! Some deputy has been harassing my family and I for years. Defendants arrest record (history) will show Deputy Gonzalez and his unit being responcable for defendants last four arrests within a mile from my house (once in my driveway) claiming random traffic stops on each account in such a short time frame (straight harassment) (Ref to P. 6) Resulting in over four hundred days (jail credit).



Deputy Gonzalez was in street clothes driving an unmarked maroon suv.(Ref to P.5) seen driving reckless without emergency lights before jumping out of said suv. and entering third party's residence on foot to perform an (Ref to P.10) illegal arrest. Truth! Deputy Gonzalez and his unit were parked outside defendant's location (private property) watching, waiting for a chance to further harass the defendant. (By no means random.) said deputies stated they observed me driving (not even remotely possible) When is enough, just that enough!! because of the street crimes units(green team) continued harassment and misconduct, I have lost my business, real property(my home), vehicles, and all my personal property, EVERYTHING!! And now the State wants me to go to prison? How is that in any way fair? (To the people that depend on me). I truely pray the state drops the new charges and time serves the old, if the State is not willing, I will be asking for a continuance on the v.o.p. hearing till after trial of the new charges. I am confident I will be found not guilty and that will open doors to file lawsuits for

damages. truely I really don't want to go Pro se and I deffenantly don't want to go against the state. this has always been home! With my back against the wall, I feel there is no other option. Again my only offer is to drop all new charges and time serve the v.o.p. I will not accept any thing else. I have nothing else to lose! I wont to thank all that have read this for your time.

I the defendant swear that all information in this statement is true to the best of my knowledge and beliefs.

Respectfully

Aaron Morris

Aaron Morris



4/ No. 18 West's Criminal Law
News NL 11

People vs. Bates
2024 IL. App.(4th) 230011
2024 WL 3190877 (ILL. App. CT. 4th Dist. 2024)

In prosecution for aggravated fleeing, or attempting, to elude peace officer, evidence was sufficient for jury to find that officer had his red and blue emergency lights activated when he pursued defendant indicating that his vehicle was official police vehicle as required to sustain verdict convicting defendant. Officer testified he turned on vehicle lights which activated dash camera, when he began to pursue defendant. Officer's dash camera video was admitted into evidence and showed that vehicles indicator lights was lit at time and only turned off once officer terminated pursuit. Officers vehicle was a common patrol vehicle with red and blue emergency lights

797 So. 2d 649

District Court of Appeals of
Florida, third District.

Gorsuch, Appellant.
vs.
The State of Florida, Appellee

Synopsis:

After jury trial, defendant was
convicted in the Circuit Court, Dade
County, Jarald Bagley, J., of fleeing
or attempting to elude officer at high
speed. Defendant appealed. the District
Court of Appeal, Nesbitt, Senior Judge
held that absence of evidence that
police vehicles involved in chase had
proper police insignia prominently
displayed barred defendants
conviction.



# Stalking

First degree harassment is a lesser included offence of stalking. Unlike harassment, stalking does not expressly require the elements of a pattern of intentional substantial, and unreasonable intrusion, but stalking inpliedly includes this element. Stalking, like harassment also includes the victim suffering mental or emotional distress, even though the stalking statute does not expressly require that the victim suffer such distress.

41 No. 5 West's Criminal
Law News NL 6

    Report by D.O.J. finding pattern of misconduct in local police department triggered duty of inquiry on part of district attorney's office

    Report by D.O.J. finding a pattern or practice of misconduct within local police department consisting of falsifying reports and using excessive force triggered duty on part of district attorney's office to investigate police department records pursuant to the duty of inquiry imposed on governing pretrial discovery, requiring inquiry into potential exculpatory evidence; report raised serious question about integrity of police officer's work.

# U.S. Court of App. 9th Circuit

## 101 F. 4th 657

Background: Defendant was convicted in the U.S. Dist. Court for the Central Dist. of Cali. André Jr J., of possession of Firearm by person who had been convicted of offence punishable by imprisonment for term exceeding one year.

Holdings: The Court of Appeals Bea Senior Circuit J, held that; Defendant had good cause for not raising issue of whether categorical statutory prohibition against possession of firearm by person who had been convicted of offence punishable by imprisonment for term exceeding one year as applied to nonviolent felons violated Second Amendment right to keep and bear arms, and therefore he could raise issue for first time on appeal, and de novo review applied and categorical statutory prohibition

against possession of firearm
by person who had been convicted
of offence punishable by
imprisonment for term exceeding
one year, as applied to nonviolent
felons, was not part of historical
tradition that delimits outer bounds
of Second Amendment right to
Keep and bear arms.

Reversed and conviction vacated

3322: Veritas quae minime defensatur
opprimitur, et qui non improbat
approbat: Truth that is not sufficiently
defended is overpowered, and he who does
not disapprove approves

State vs Bookman
2022 WL 3639439 (N.J. 2022)

Background: Following denial of motion to suppress, defendant was convicted in the superior court, Law Division, Camden county, of second degree unlawful possession of a handgun. Defendant appealed, and the superior court appellate division 2021 WL 1750146 affirmed. Defendant's petition for certification was granted

Holdings: The Supreme Court Fuentes J. held that officers warrantless entry into third party's residence was not justified under Hot Pursuit Doctrine and, thus violated Fourth Amendment and state Constitution and assertion that defendant was present in high crime area did not invoke "Hot Pursuit Doctrine."

205 Ill. App. 3d 629

State, Plaintiff, Appellant
vs
William Villarreal, Defendant
Appellee
Nos. 3-89-0358, 3-89-0359

State appealed from orders of the Circuit Court of Kox County, Kent Slater J., which quashed arrests and dismissed all charges against defendants arising out of confrontation with police officers in defendants home. The Appellate Court, Scott, J., held that police officers warrantless entry into defendants home to arrest third party transgressed defendants Fourth Amendment rights.

67 Stan.L.Rev. 743

Brady's Blind Spot

The Supreme Court's Brady doctrene requires prosecuters to disclose favorable, material evidence to the defence, but in some jurisdictions even well-meaning prosecuters cannot carry out this obligation when it comes to one critical area of evidence: Officers personal files. These files contain valuable evidence of misconduct that can be used to attack an officers credibility on the whitness stand and can make the difference between acquittal and conviction. But State Statutes and local policies prevent prosecuters from accessing these files. Their ability to disclose this information as required by Constitutional Law is constrained by officers and unions who have used litigation, legislation, and informal political pressure to provent Brady's application to these files. Officer misconduct should receive no protections. Suppression of misconduct can cost defendants their Lives!



12 West's Pa. Prac. Law of Probation and Parole 14:5:5 (3d ed)

Despite the limited Fourth Amendment rights possessed by parolees and probationers, there are some cases where an offender still retains those rights. While state parole agents and county probation officers may conduct warrantless searches in order to uncover evidence of technical violations, law enforcement officers are still required to obtain a search warrant backed up by probable cause. When it is police officers who perform a challenged search, and the evidence uncovered thereby which is subject to a successful suppression motion in the related criminal prosecution, the contraband uncovered as a result of the challenged search may not be used as evidence in a probation violation hearing.



92 A.L.R. 6th 1

Admissibility in State Probation Revocation Proceedings, of evidence obtained through illegal search and seizure. Supreme Court dicisions have clearly indicated that the principle purpose of the exclusionary rule is to protect a persons 4th Amendment rights by removing the incentive to violate them. Accordingly, it is widely recognized that whether the exclusionary rule should be applied to a particular proceeding apart from the prosecution's case in chief, depends upon a balancing of the police-misconduct deterrence benefits from applying the exclusionary rule against the societal cost of withholding from the particular judicial or administrative proceedings.



65. B.C.L. Rev. 1755

The exclusionary rule has long been misunderstood. Scholars and judges percieve it as addressing police officers, warning them that evidence obtained in an unconstitutional search or seizure may be inadmissable in court, but officers typically care little about the ultimate conviction of suspects (as opposed to their arrests) and are therefore minimally deterred by possible suppression of evidence. Even when officers want to prevent suppression they often do not know the complicated search and seizure rules and do not recieve adequate training about them the exclusionary rule is puzzling, For more then a half century it has served as the criminal justices main deterrent to unconstitutional search and seizures.

The Guilty Plea as a Waiver of present but unknowable Constitutional Rights

Contrary to the popular image of our criminal justice system as one which a defendants guilt or innocence is adjudicated at trial by a jury of peers. The overwhelming majority of criminal dispositions are achieved short of trial by a plea of guilty, because of the dominant role the prosecution plays in reality in the criminal justice system. Special attention should be paid to the consequences of guilty pleas for defendants, particularly for there function as a waiver of constitutional rights that may have been violated by the state during investigation, indictment, and prosecution. While courts have triditionaly required that a plea be volintary and intellegantly made for it to constitute an effective waiver of constitutional rights. The issue of whether a defendant can intellegantly waive rights that were not in existance at the

Time of the plea has proved intractable. The interest of the state in the finality of criminal convictions would appear to be counter-balanced by the unfairness to the defendant of inputing a knowing waiver to rights which were not in existance at the time of the supposedly intelligant act.

Search and Seizure: A Treatise
On The Fourth Amendment.

/ Search and Seizure § 1.4(e)(6th ed)
March 2024 Update

The Exclusionary rule and other
Remedies

The Scott "bad faith" doctrene

The result of the Scott decision is a substantial neutralization of whatever deterrent disincentives the exclusionary rule currently produces, because any colorable legal construct thats accounts for the conduct of officers as objectively viewed viliates at Law the consequences of their improper motives. This implies, for example that if vice squad officers stop a car to search an individual for narcotics without the requisite probable cause or Terry vs. Ohio reasonable suspision, the fact that the search was unlawfully motivated is irrelevent to the question of the existance of a remediable fourth Amendment violation as long as a court can point

To other objectively reasonable grounds for stopping the car, such as a minor traffic violation.

Scott also undermines the long established rule that an arrest may not be used as a pretext to search for evidence, since fourth amendment violations cannot now be established by demonstrating the unlawful motives of the arresting officers " If subjective intent is an inadmissible consideration on the issue whether or not there has been a substantive fourth amendment violation what other way is there to explore police officers deterrable motivations for making a stop, an arrest or a search?